IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ADOBE SYSTEMS INCORPORATED, a Delaware corporation, AUTODESK, INC., a Delaware corporation, and CNC SOFTWARE, INC., | § § § § § | Cause No. 1:17-cv-00018 |
| Plaintiffs, | § § | |
| v. | § § | |
| SKH SYSTEMS, INC., a Texas corporation, and CHORNG "JACK" HWANG, individually and d/b/a JACK'S LAPTOPS, | § § § § § | |
| Defendants. | § | JURY TRIAL DEMANDED |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs Adobe Systems Incorporated ("Adobe"), Autodesk, Inc. ("Autodesk"), and CNC Software, Inc. ("CNC"), (collectively, "Plaintiffs") file this Original Complaint against Defendants SKH Systems, Inc. ("SKH Systems"), and Chorng Hwang ("Hwang"), individually and d/b/a Jack's Laptops, (collectively, "Defendants") for trademark infringement and counterfeiting in violation of 15 U.S.C. § 1114, unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A), and copyright infringement in violation of 17 U.S.C. §501, et seq.

### I. PARTIES

1.      Adobe is a Delaware corporation with its principal place of business in San Jose, California.

2.      Autodesk is a Delaware corporation with its principal place of business in San Rafael, California.

3.       CNC is a Connecticut corporation with its principal place of business in Tolland, Connecticut.

4.       SKH Systems, Inc. is a Texas corporation with its principal place of business in Austin, Texas, and may be served with process via its registered agent, Chorng "Jack" Hwang, at 10619 Winchelsea Dr., Austin, Texas, 78750-4033.

5.       Jack's Laptops is a Texas sole proprietorship operated by Chorng "Jack" Hwang in Austin, Texas, and may be served with process via Chorng "Jack" Hwang, at 10619 Winchelsea Dr., Austin, Texas, 78750-4033.

6.       Chorng "Jack" Hwang is an individual who resides at 10619 Winchelsea Dr., Austin, Texas, 78750-4033.

7.       Defendants are engaging in the promotion and sale of counterfeit and infringing products within this Judicial District.

## II.  JURISDICTION AND VENUE

8.        The Court has subject-matter jurisdiction over Plaintiffs' claims in this action pursuant to 15 U.S.C. §1114 (trademark and counterfeiting), 15 U.S.C. §1125(a) (unfair competition), 17 U.S.C. §501, et seq. (copyright), 28 U.S.C. §1331 (federal subject matter jurisdiction), §1338(a) (trademark and copyright actions), and 28 U.S.C. §1338(b) (unfair competition).

9.       The Court has personal jurisdiction over Defendants because Hwang is a citizen, resident, and is domiciled in the State of Texas and is the sole proprietor of Jack's Laptops, and SKH Systems, Inc. is a Texas corporation with its principal place of business in the State of Texas. The Court also has personal jurisdiction over Defendants because the acts that are the subject of

Plaintiffs' claims, including trademark infringement and counterfeiting, unfair competition, and copyright infringement were committed by Defendants in the State of Texas in this District. Defendants are doing business in this District and committing acts of infringement, unfair competition, and other wrongs in this District.

10.    Under 28 U.S.C. § 1391(b)(1), venue is proper in this District because Defendants reside in this District and are residents of Texas. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims of this action occurred in this District.

### III. FACTUAL ALLEGATIONS

11.    Plaintiffs are in the business of, and have made and continue to make substantial investments of time, effort, and expense in, designing, developing, testing, manufacturing, publishing, marketing, distributing, and licensing a wide variety of software products recorded on various media, including, without limitation, optical disks for use on computers.

12.    In connection with Plaintiffs' software products, each Plaintiff owns copyrights that are the subject of registrations with the United States Copyright Office.

13.    Each Plaintiff advertises markets, distributes, and licenses their respective software and related components under federally registered trademarks and service marks. Each Plaintiff uses these trademarks and service marks to distinguish their products from the software and related items of others in the same or related fields.

14.    Widespread use of illegal copies of Plaintiffs' software products (commonly known as software piracy) has caused, and continues to cause, significant harm to Plaintiffs and undermines Plaintiffs' investments in their products.

15.     Plaintiffs bring this action as a result of Defendants' willful, repeated and ongoing unauthorized reproduction and use of certain of Plaintiffs' software products. Defendants' actions and omissions complained of herein were, and continue to be, undertaken willfully, intentionally, and maliciously and have caused, and continue to cause, substantial damage to Plaintiffs.

16.     Plaintiffs respectfully request that the Court enter an injunction against Defendants and award Plaintiffs damages, costs, and attorney's fees as allowed by statute.

A.    **Adobe's Software Products, Copyrights, and Trademarks**

17.     Adobe develops, advertises, markets, distributes, and licenses a number of computer software programs. Adobe's software programs are recorded on distributable media, such as DVDs, or are made available for download through various authorized distribution channels.   Adobe's software products include multimedia, creativity, Internet application, document services, and other programs.  The Adobe CS6 software, along with all component parts and reference materials, is hereinafter collectively referred to as the "Adobe Products."

18.     The Adobe Products contain material that is wholly original with Adobe and is copyrightable subject matter under the laws of the United States.  At all times herein relevant, Adobe complied in all respects with the Copyright Act and secured the exclusive rights and privileges in and to the copyrights in the Adobe Products.

19.     Each of the Adobe Products is an original work, copyrightable under the Copyright Act and has been timely registered in full compliance with the Copyright Act.  Adobe has received a Certificate of Registration from the Register of Copyrights for each of the Adobe Products at issue in this lawsuit (*See* Exhibit A).

20.     Since the registration of the Adobe Products, they have been published and distributed by Adobe or under its authority in compliance with the provisions of the Copyright Act. Adobe has thus fully maintained the validity of the copyrights in the Adobe Products.

21.     Adobe has never authorized Defendants to copy or reproduce the Adobe Products or any other Adobe software in violation of Adobe's copyrights.

22.     Adobe has also duly and properly registered the following trademark and service mark in the United States Patent and Trademark Office on the Principal Register that is relevant to this matter: Adobe® Trademark and Service Mark Registration No. 1,475,793 for computer programs and computer programming services.   A true and correct copy of the Trademark Registration listed above is attached as Exhibit B. The registration of the mark constitutes *prima facie* evidence of its validity and conclusive evidence of Adobe's exclusive right to use the Adobe Mark in connection with the goods identified therein and other commercial goods. The registration of the mark also provides constructive notice to Defendants of Adobe's ownership and exclusive rights in the Adobe Mark. The Adobe Mark at issue in this case has been continuously used in interstate commerce and has never been abandoned.

**B.     Autodesk's Products, Copyrights, and Trademarks**

23.     Autodesk develops, advertises, markets, distributes, and licenses a number of computer software programs. Autodesk's software programs are recorded on distributable media, such as DVDs, or are made available for download through various authorized distribution channels.   Autodesk's software products include computer-aided design programs and other programs, including the AutoCAD® 2012 software ("AutoCAD").  The AutoCAD 2012 software

along with all component parts and reference materials, are hereinafter collectively referred to as the "Autodesk Products."

24.     Each of the Autodesk Products contains a large amount of material that is wholly original with Autodesk and is copyrightable subject matter under the laws of the United States.  At all times herein relevant, Autodesk complied in all respects with the Copyright Act and secured the exclusive rights and privileges in and to the copyrights in the Autodesk Products (collectively the "Autodesk Copyrights").

25.     Each of the Autodesk Products is an original work, copyrightable under the Copyright Act and has been timely registered in full compliance with the Copyright Act. Autodesk has received proof of registration for each of the Autodesk Products at issue in this lawsuit (*See* Exhibit C).

26.     Since the registration of the Autodesk Copyrights, the Autodesk Products have been published and distributed by Autodesk or under its authority in compliance with the provisions of the Copyright Act. Autodesk has thus fully maintained the validity of the copyrights in the Autodesk Products.

27.     Autodesk has never authorized Defendants to copy or reproduce the Autodesk Products in violation of any of the Autodesk Copyrights.

28.     Autodesk has also duly and properly registered a number of trademarks and service marks in the United States Patent and Trademark Office on the Principal Register, including without limitation:

    (a)     Autodesk® Trademark Registration No. 1,316,772, and

    (b)     Autodesk® AutoCAD® Trademark Registration No. 1,316,773, (the "Autodesk Marks").

True and correct copies of the Trademark Registrations listed above are attached as Exhibit D.

The registration of the marks constitutes *prima facie* evidence of their validity and conclusive evidence of Autodesk's exclusive right to use the Autodesk Marks in connection with the goods identified therein and other commercial goods. The registration of the marks also provides constructive notice to Defendants of Autodesk's ownership and exclusive rights in the Autodesk Marks. The Autodesk Marks at issue in this case have been continuously used in interstate commerce and have never been abandoned.

**C.    CNC's Products, Copyrights and Trademarks**

29.    CNC develops, advertises, markets, distributes, and licenses a number of computer software programs. CNC's software programs are recorded on distributable media, such as DVDs, or are made available for download through various authorized distribution channels.  CNC's software products include tools for CAD/CAM manufacturing markets, including Mastercam versions X5 and X9. These products, along with their reference materials, are hereinafter collectively referred to as the "CNC Products."

30.    The CNC Products contain a large amount of material that is wholly original with CNC and is copyrightable subject matter under the laws of the United States.  At all times herein relevant, CNC complied in all respects with the Copyright Act and secured the exclusive rights and privileges in and to the copyrights in the CNC Products (collectively the "CNC Copyrights").

31.    Each of the CNC Products is an original work, copyrightable under the Copyright Act and has been timely registered in full compliance with the Copyright Act.  CNC has received proof of registration for each of the CNC Products at issue in this lawsuit (*See* Exhibit E).

32.     Since the registration of the CNC Copyrights, the CNC Products have been published and distributed by CNC or under its authority in compliance with the provisions of the Copyright Act. CNC has thus fully maintained the validity of the copyrights in the CNC Products.

33.     CNC has never authorized Defendants to copy or reproduce the CNC Products in violation of any of the CNC Copyrights.

34.     CNC has also duly and properly registered a number of trademarks and service marks in the United States Patent and Trademark Office on the Principal Register, including without limitation, Mastercam Trademark and Service Mark Registration No. 1462626 for computer programs and computer programming services (the "CNC Marks"). A True and correct copy of the CNC Marks listed above is attached as Exhibit F. The registration of the mark constitutes *prima facie* evidence of its validity and conclusive evidence of CNC's exclusive right to use the CNC Marks in connection with the goods identified therein and other commercial goods. The registration of the marks also provides constructive notice to Defendants of CNC's ownership and exclusive rights in the CNC Marks. The CNC Marks at issue in this case have been continuously used in interstate commerce and have never been abandoned.

D.      **The Global Problem of Software Piracy**

35.     Software developers lose billions of dollars in annual revenue from software piracy, namely, the unauthorized and unlawful copying, downloading, and distributing of copyrighted and trademarked software and related components. In 2015, the commercial value of unlicensed software in the United States was in excess of $9 billion. *See* Business Software Alliance, *Seizing Opportunity Through License Compliance: BSA Global Software Survey 2016,* http://globalstudy.bsa.org/2016/index.html.

36.     One prominent form of obtaining unlicensed software is "hard-disk loading," which is the unauthorized copying and installation of infringing software on devices.  Those devices are then sold in competition with, and often for lower prices than, devices pre-installed with legally licensed copies of software.

37.     Software developers like Plaintiffs are not the only victims. Plaintiffs' customers are also victims, for they are often deceived by distributors of unlicensed software; these distributors go to great lengths to make the software appear genuine. When this occurs, customers may unwittingly expose themselves to security risks associated with the use of unlicensed software. *See* Federal Bureau of Investigation, *Consumer Alert: Pirated Software May Contain Malware*, Aug. 1, 2013, at http://www.fbi.gov/news/stories/2013/august/pirated-software-may-contain-malware/ (noting the relatively greater risk that such software is infected with malicious software, or "malware," which can be used to record keystrokes and thus capture sensitive information such as user names, passwords, and Social Security numbers); IDC, *Unlicensed Software and Cybersecurity Threats*, January 2015; *The Link between Pirated Software and Cybersecurity Breaches*, March 2014, at http://www.news.microsoft.com/download/presskts/dcu/docs/idc/031814.pdf (concluding that, on average, a user of an unlicensed software package has a one-in-three chance of encountering malware).

38.     In 2015, 49% of Chief Information Officers identified security threats from malware as a major threat posed by unlicensed software.  *See* Business Software Alliance, *Seizing Opportunity Through License Compliance: BSA Global Software Survey 2016*, http://globalstudy.bsa.org/2016/index.html; *see also Fighting Cybercrime with Actionable Insights*, at

http://www.slideshare.net/IBMBDA/infographic-fighting-cybercrime-with-actionable-insights

(reporting organizations experience some form of malware attack every seven minutes).

### E.    Distribution Channels and Product Activation

39.    Like many other software developers, Plaintiffs have implemented a wide range of initiatives to protect their customers and combat theft of their intellectual property. One important tool is the product activation system utilized by Plaintiffs, which involves the activation of software through product keys or "serial numbers." Generally, when customers or manufacturers install Plaintiffs' software on their computers, they must enter a product key or serial number.  In some cases, this completes the activation process.  In other cases, the activation process requires an additional step in which customers or manufacturers voluntarily contact Plaintiffs' individual activation servers over the Internet and transmit their product key/serial number and other technical information about their device to the servers.

40.    The activation process is analogous to the activation of credit cards or mobile phones with a code provided by the financial institution or the mobile carrier. Because Plaintiffs' copyrighted software is capable of being installed on an unlimited number of computers, Plaintiffs rely on their activation process to detect and protect consumers from the risk of non-genuine software.

41.    When distributing to product manufacturers, each copy of Plaintiffs' software that is licensed is distributed with a product key/serial number unique to that *copy* of the software—thus, if a customer licenses ten copies of particular software, the customer is supplied with ten unique product keys/serial codes, or one product key/serial code with ten licenses to access across

a network, or a combination of network and single user licenses where the total number of usable licenses does not exceed ten.

**F.     The Business and Infringing Activities of Defendants**

42.     According to public records, Defendant Chorng "Jack" Hwang is the Director and President of SKH Systems, Inc., a domestic for-profit corporation registered in Texas as computer and software stores. Upon information and belief, Defendants sell refurbished laptops, USB drives, and hard drives with preloaded software, including Plaintiffs' software, under the business name "Jack's Laptops."   Upon information and belief, Defendants are active in the Austin area and use Craigslist, a Facebook store page, and University of Texas posts (amongst other means) to market their business.

43.     Upon information and belief, Hwang has a technical background as a programmer and technology consultant and offers technical support services for customers of Jack's Laptops. To consummate sales, Hwang meets customers at public locations, such as local coffee shops.   Upon information and belief, Hwang is in the business of distributing, advertising, publicly displaying, offering for sale, and/or selling software programs bearing logos and source-identifying indicia and design elements that are unauthorized imitations of one or more of the Adobe Marks, Autodesk Mark and CNC Marks.

44.     Plaintiffs are informed and believe that Chorng "Jack" Hwang provided, installed and activated unauthorized and unlawful copies of Plaintiffs' software, including MasterCamX5, AutoCAD 2012, and CS6, for customers within this Court's jurisdiction.

45.     Plaintiffs are further informed and believe that Hwang engaged in the conduct described above with full knowledge and understanding of its unlawful nature, and therefore

engaged in such acts willfully and intentionally. For example, and without limitation, upon and information and belief Hwang, in connection with his unlawful distribution and sale of Plaintiffs' software to customers within this Court's jurisdiction, acknowledged to such customers that the software he was installing and activating "[was] not licensed," and that if people wanted to purchase licensed software, they would have to do so directly from the company for "full price." Defendants have no license, authority, or other permission from Plaintiffs to use any of the Adobe, Autodesk or CNC Marks in connection with the advertising, promotion, distribution, public display, sale, and/or offer for sale of the counterfeit software programs at issue. Indeed, upon information and belief, Defendants use counterfeit serial numbers to activate Plaintiffs' products they then sell to customers within this Court's jurisdiction.

46.     Each of these acts constitutes the unauthorized copying, distribution, and use of Plaintiffs' software licenses and their respective intellectual property rights.

47.     Defendants have committed and continue to commit acts of copyright and trademark infringement against Plaintiffs. Defendants have acted with willful blindness to, or in reckless disregard of, Plaintiffs' registered copyrights, trademarks and service marks.

48.     The foregoing acts of Defendants are intended to cause, have caused, and are likely to continue to cause, confusion or mistake, or to deceive consumers, the public, and the trade into believing that counterfeit Adobe, Autodesk and CNC software products offered for sale and sold by Defendants are authentic or authorized products of Plaintiffs.

49.     The activities of Defendants, as described above, are likely to create a false impression and deceive consumers, the public, and the trade into believing that there is a

connection or association between the counterfeit Adobe, Autodesk and CNC software products and Plaintiffs.

50.     Defendants are well aware of the strength of the Adobe, Autodesk and CNC brands, the Adobe Marks, Autodesk Mark and CNC Marks, and the incalculable goodwill associated with the brands and marks.

51.     Defendants' knowing and deliberate hijacking of Plaintiffs' marks and sale of counterfeit products has caused, and continues to cause, substantial and irreparable harm to Plaintiffs' goodwill and reputation.  In addition, the damages caused by Defendants are especially severe because the counterfeit products are inferior in quality to authentic Adobe, Autodesk and CNC software products.

52.     Moreover, Plaintiffs have no ability to control the quality of the goods provided by Defendants in conjunction with the Adobe, Autodesk and CNC Marks, and, therefore, are at risk of irreparable harm for which there is no remedy at law and which money damages cannot repair.

53.     By way of example, if customers of Defendants purchase inferior software products, they will likely mistakenly attribute those products to Plaintiffs due to Defendants' adoption of the same marks.  This is heightened by Defendants' strategy to provide the same or similar products to the same customer base.  As established above, these actions are taken intentionally by Defendants as part of a scheme to trade on the goodwill built by Plaintiffs through Plaintiffs' investment of time, efforts, and advertising in the Adobe, Autodesk and CNC Marks.  Defendants are intentionally trading off the goodwill Plaintiffs have built up in their marks over years of use and promotion.

54.     Plaintiffs therefore seek the entry of an injunction preventing the installation and activation of Adobe, Autodesk and/or CNC software products by Defendants using counterfeit product key codes/serial numbers.  Plaintiffs also seek damages, including exemplary damages, statutory damages, and attorneys' fees, as a result of Defendants' knowing, deliberate and willful disregard of the activities infringing Plaintiffs' copyrights, trademarks and service marks.

## IV. CLAIMS FOR RELIEF

### COUNT I
### Trademark Infringement and Counterfeiting Under 15 U.S.C. § 1114
### (by All Plaintiffs Against All Defendants)

55.     Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs as if fully set forth herein.

56.     Plaintiffs advertise, market, distribute, and license their software and related components under the trademarks and service marks described above and uses these trademarks and service marks to distinguish their products from the software and related items of others in the same or related fields.

57.     Because of Plaintiffs' long, continuous, and exclusive use of these trademarks and service marks, they have come to mean, and are understood by customers, end users and the public to signify software programs and related components or services of Plaintiffs.

58.     Defendants, without authorization from Plaintiffs, have used and are continuing to use in commerce counterfeit product key codes/serial numbers that are substantially indistinguishable from legitimate product key codes/serial numbers used to lawfully activate Plaintiffs' software products. Defendants' activities constitute infringement of Plaintiffs' federally registered trademarks and service marks with the registration numbers listed above.

59.     The infringing materials that Defendants have and are continuing to advertise, market, install, activate, offer, and distribute are intended to cause, have caused, and are likely to continue to cause confusion or mistake, or to deceive consumers and the public as to their source, origin, or authenticity.

60.     Further, Defendants' activities are likely to lead the public to conclude, incorrectly, that the infringing materials that Defendants are advertising, marketing, installing, activating, offering and/or distributing originate with or are authorized by Plaintiffs, thereby harming Plaintiffs, their licensees, and the public.

61.     At a minimum, Defendants acted with willful blindness to, or in reckless disregard of, Plaintiffs' registered marks.

62.     Defendants' acts constitute trademark infringement and counterfeiting of the Adobe, Autodesk and CNC Marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.  As established by the registration of the marks, the marks are protectable and enforceable against Defendants, Plaintiffs are the owners of the respective marks, and Plaintiffs are the senior users of their respective marks.   Moreover, Defendants' actions have caused a likelihood of confusion and damage to Plaintiffs.  In particular, through infringement of the Adobe, Autodesk and CNC Marks, Defendants are harming Plaintiffs and diverting sales that would otherwise go to Plaintiffs.  Defendants' infringement of the Adobe, Autodesk and CNC Marks is likely to cause confusion and mistake as to the source of Defendants' goods.

63.     Under Section 35 of the Lanham Act, 15 U.S.C. § 1117(a) and (b), Plaintiffs are entitled to recover from Defendants:   (i) Defendants' profits, (ii) the damages sustained by Plaintiffs, and (iii) the costs of this action. Due to the knowing, intentional, and purposeful nature

of Defendants' conduct, Plaintiffs seek treble the amount of their actual damages.  Due to the exceptional nature of this case, Plaintiffs also seek their reasonable attorney's fees. Alternatively, Plaintiffs are entitled to statutory damages under 15 U.S.C. §1117(c).

64.     Pursuant to 15 U.S.C. §1116, Plaintiffs are further entitled to injunctive relief and an order compelling the impounding of all infringing materials.  Plaintiffs have no adequate remedy at law for Defendants' wrongful conduct because, among other things: (a) Plaintiffs trademarks and service marks are unique and valuable property that have no readily determinable market value; (b) Defendants' infringement constitutes harm to Plaintiffs' reputation and goodwill such that Plaintiffs could not be made whole by any monetary award; (c) if Defendants' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin or authenticity of the infringing materials; and (d) Defendants' wrongful conduct, and the resulting harm to Plaintiffs, is continuing.

COUNT II
**Unfair Competition Under 15 U.S.C. § 1125(a)**
**(by All Plaintiffs Against All Defendants)**

65.     Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs as if fully set forth herein.

66.     Defendants' acts committed in the course of interstate commerce constitute materially false and misleading misrepresentations of fact with respect to the origin of Defendants' goods, and the affiliation, sponsorship, and approval of Defendants' goods in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

67.     In accordance with Section 34 of the Lanham Act, 15 U.S.C. § 1116, Plaintiffs are further entitled to injunctive relief and an order compelling the impounding of all infringing

materials.  Plaintiffs have no adequate remedy at law for Defendants' wrongful conduct because, among other things: (a) Plaintiffs' trademarks and service marks are unique and valuable property that have no readily determinable market value; (b) Defendants' infringement constitutes harm to Plaintiffs' reputation and goodwill such that Plaintiffs could not be made whole by any monetary award; (c) if Defendants' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin or authenticity of the infringing materials; and (d) Defendants' wrongful conduct, and the resulting harm to Plaintiffs, is continuing.

68.     Under Section 35 of the Lanham Act, 15 U.S.C. § 1117(a), Plaintiffs are entitled to recover from Defendants:  (i) Defendants' profits, (ii) the damages sustained by Plaintiffs, and (iii) the costs of this action.  Due to the knowing, intentional, and purposeful nature of Defendants' conduct, Plaintiffs seek treble the amount of their damages.  Due to the exceptional nature of this case, Plaintiffs seek their reasonable attorney's fees.

<u>COUNT III</u>
**Copyright Infringement Under 17 U.S.C. §501 *et seq.***
**(by All Plaintiffs Against All Defendants)**

69.     Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs as if fully set forth herein.

70.     Plaintiffs are the sole owners of their respective Adobe Products, Autodesk Products, and CNC Products, and of the corresponding copyrights and Certificates of Registration with the registration numbers listed above.

71.     Defendants have infringed Plaintiffs copyrights by reproducing or distributing Plaintiffs' software in the United States without approval or authorization from Plaintiffs.

72.    At a minimum, Defendants acted with willful blindness to, or in reckless disregard of, Plaintiffs' registered copyrights.

73.    As a result of Defendants' wrongful conduct, Plaintiffs are entitled to recover their actual damages and Defendants' profits attributable to the infringement. Alternatively, Plaintiffs are entitled to statutory damages under 17 U.S.C. §504(c).

74.    The award of statutory damages should be enhanced in accordance with 17 U.S.C. §504(c)(2).

75.    Plaintiffs are further entitled to injunctive relief and an order compelling the impounding of all infringing materials.  Plaintiffs have no adequate remedy at law for Defendants' wrongful conduct because, among other things: (a) Plaintiffs' copyrights are unique and valuable property that have no readily determinable market value; (b) Defendants' infringement harms Plaintiffs such that Plaintiffs could not be made whole by any monetary award; (c) Defendants' wrongful conduct, and the resulting harm to Plaintiffs, is continuing.

<u>COUNT IV</u>
**Circumvention of Copyright Protections Measures under 17 U.S.C. §1201(a)**
**(by All Plaintiffs Against All Defendants)**

76.    Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs as if fully set forth herein.

77.    17 U.S.C. §1201(a) provides that "no person shall circumvent a technological measure that effectively controls access to a work protected under this title." 17 U.S.C. §1201(a)(1). To "circumvent a technological measure" means to descramble, decrypt, or otherwise "avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner." *Id.* at §1201(a)(3)(A).

78.     The Adobe Products, Autodesk Products, and CNC Products contain Access Control Technology used to prevent access to the Adobe Products, Autodesk Products and CNC Products by those who do not have legal access.

79.     Upon information and belief, and without Plaintiffs' authorization, Defendants willfully, intentionally, and maliciously circumvented the Access Control Technology in violation of 17 U.S.C. §1201(a).

80.     Defendants' willful, intentional and malicious circumvention of the Access Control Technology has caused and will continue to cause Plaintiffs to suffer substantial injuries, loss, and damage to their respective proprietary and exclusive rights in the Adobe Products, Autodesk Products and CNC Products, the Adobe Marks, Autodesk Mark, and CNC Marks, and the Adobe Copyrights, Autodesk Copyrights, and CNC Copyrights; and has caused and will continue to cause Plaintiffs to lose profits in amounts not yet ascertained.

81.     As a result of Defendants' wrongful conduct, Plaintiffs are entitled to recover their actual damages and Defendants' additional profits. Alternatively, Plaintiffs are entitled to statutory damages under 17 U.S.C. §1203(c)(3).

82.     Plaintiffs are further entitled to injunctive relief as Defendants' circumvention of the Access Control Technology, and the threat of continuing circumvention, have caused and will continue to cause Plaintiffs to suffer repeated and irreparable injury. It would be difficult to ascertain the amount of money damages that would afford Plaintiffs adequate relief at law for Defendants' continuing acts and omissions complained of herein, and a multiplicity of judicial proceedings would be required.  Plaintiffs' remedy at law is not adequate to compensate them for the injuries already inflicted and further threatened by Defendants.    Therefore, Plaintiffs

respectfully request as prayed for below that Defendants be restrained and enjoined as authorized by the Copyright Act, and any device or product in Defendants' possession, custody or control that enabled or was involved in the circumvention be impounded pursuant to 17 U.S.C. §1203(b).

## V. APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTION

83.     Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs as if fully set forth herein.

84.     On information and belief, Defendants, unless enjoined, will continue to use marks that are likely to cause confusion as to the source of their products and services and use marks that incorrectly suggest or are likely to cause confusion as to whether Defendants are affiliated with Plaintiffs.  All of these acts violate the Lanham Act.

85.     These actions entitle Plaintiffs to a preliminary injunction and, upon hearing, permanent injunction enjoining Defendants, their officers, agents, servants, employees, and attorneys, and all those persons in active concert or in participation with Defendants, from:

> (i)     copying or making any other infringing use or infringing distribution of Plaintiffs' software and other intellectual property including but not limited to the software identified by the Trademark, Service Mark, and Copyright Registration Numbers listed above;

> (ii)     assembling, producing, distributing, offering for distribution, activating, circulating, selling, offering for sale, advertising, importing, promoting, or displaying any of Plaintiffs' software or other intellectual property bearing any simulation, reproduction, counterfeit, copy, or colorable imitation of any of Plaintiffs' registered trademarks, service marks, or copyrights, including but not limited to the Trademark, Service Mark, and Copyright Registration Numbers listed above;

> (iii)     using any simulation, reproduction, counterfeit, copy or colorable imitation of Plaintiffs' registered trademarks, service marks, or copyrights, including but not limited to the Trademark, Service Mark, and Copyright Registration Numbers listed above, in connection with the assembly, production, distribution, offering for distribution, activation, circulation, sale, offering for sale, import, advertisement, promotion or display of any software, component, and/or other item not authorized or licensed by Plaintiffs.

(iv)     circumventing any technological measure that effectively controls access to any of Plaintiffs' copyrighted software products;

(v)     destroying or otherwise disposing of, or altering, any copies of software or other products, materials, technologies, services, devices, components, documents, or electronically stored data or files that relate or pertain in any way to the: (a) copying, reproduction, distribution or use of any of Plaintiffs' copyrighted software products; (b) circumvention of any technological measure that effectively controls access to any of Plaintiffs' copyrighted software products; or (c) infringement of any of Plaintiffs' copyrights;

(vi)     engaging in any other activity constituting an infringement of any of Plaintiffs' trademarks, service marks, and/or copyrights, or of Plaintiffs' rights in, or right to use or to exploit, these trademarks, service marks, and/or copyrights; and

(vii)     assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities listed above.

86.     For these actions, there is no adequate remedy at law. Further, Plaintiffs are substantially likely to prevail on the merits of these claims. The injury to Plaintiffs greatly outweighs any injury to Defendants that the requested injunction may cause. The balance of hardships tips strongly in favor of Plaintiffs. Finally, the injunction will not disserve the public interest. Therefore, Plaintiffs are entitled to preliminary and permanent injunctive relief against Defendants.

## VI. Demand for Jury Trial

In accordance with Federal Rule of Civil Procedure 38, Plaintiffs hereby demand a trial by jury on their claims alleged against Defendants.

## VII. Request for Relief

For these reasons, Plaintiffs Adobe Systems, Incorporated, Autodesk, Inc., and CNC Software, Inc. respectfully request the Court to:

1.     In accordance with 15 U.S.C. § 1116, issue a preliminary and permanent injunction enjoining Defendants, their officers, agents, servants, employees, and attorneys, and all

those persons in active concert or participation with Defendants, from the acts described in paragraph 85 of this Complaint;

2.      Order Defendants, their officers, agents, servants, employees, and attorneys, and all those persons in active concert or participation with Defendants, to provide an accounting of all sales, revenues, and profits related to Defendants' goods and services that infringe the Adobe, Autodesk and CNC Marks and that are falsely designated as being sponsored by, approved by, affiliated with, or associated with Plaintiffs;

3.      Award Plaintiffs their actual, treble, and exemplary damages or, alternatively, award Plaintiffs statutory damages pursuant to 15 U.S.C. §1117(c) and 17 U.S.C. §1203(c)(3), and enhanced statutory damages pursuant to 17 U.S.C. §504(c)(2).

4.      In accordance with 15 U.S.C. § 1118, order all materials in Defendants' possession or control bearing the Adobe Marks, Autodesk Mark and CNC Marks be surrendered for destruction;

5.      In accordance with 15 U.S.C. § 1117(a), find this case to be exceptional in Plaintiffs' favor and award Plaintiffs their reasonable attorney's fees, costs, and expenses of this action;

6.      Award Plaintiffs pre-judgment and post-judgment interest at the maximum allowable interest rate; and

7.      Grant Plaintiffs such other relief, at law or in equity, to which they are justly entitled.

Dated:  January 9, 2017                    Respectfully submitted,


**KLEMCHUK LLP**

*/s/ Aaron Davidson*
Darin Klemchuk
State Bar No. 24037685
darin.klemchuk@klemchuk.com
Aaron Davidson
State Bar No. 24007080
aaron.davidson@klemchuk.com
8150 N. Central Expressway, 10th Floor
Dallas, Texas 75206
Telephone: 214.367.6000
Facsimile:   214.367.6001

**ATTORNEYS FOR PLAINTIFFS
ADOBE SYSTEMS INCORPORATED,
AUTODESK, INC., AND
CNC SOFTWARE, INC.**