IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

ADOBE SYSTEMS INCORPORATED,
AUTODESK, INC., and CNC SOFTWARE, INC.,
    Plaintiffs,

-vs-                                                 Case No. A-17-CA-018-SS

SKH SYSTEMS, INC. and CHORNG (JACK) HWANG, individually and d/b/a JACK'S LAPTOPS,
    Defendants.

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Plaintiffs Adobe Systems Incorporated (Adobe), Autodesk Inc. (Autodesk), and CNC Software, Inc. (CNC) (collectively, Plaintiffs)' Motion for Summary Judgment [#29], Defendant Chorng "Jack" Hwang (Hwang)'s Response and Motion to Exclude Evidence [#32], and Plaintiffs' Reply [#33] in support. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders.

## Background

### I.    The Parties

Plaintiffs produce an assortment of software products for use in a variety of technology, including computers. Compl. [#1] ¶ 11. Plaintiffs have obtained copyright registrations for each of their software products and market, distribute, and license their products under federally registered trademarks (the Marks). *Id.* ¶ 12; Mot. Summ. J. [#29] Ex. A (Registrations).[1]

---

[1] Specifically, Adobe produces the Adobe CS6 products, which are all individually copyrighted with the United States Copyright Office. Compl. [#1-2] Ex. A (Adobe Copyright Registrations) at 2–6. Adobe owns the ADOBE registered mark for computer programs and computer services. *Id.* [#1-3] Ex. B (Adobe Trademark Registration) at 2. Autodesk produces the AutoCAD 2012 software products, which are also copyrighted. *Id.* [#1-4] Ex. C (AutoDesk Copyright Registrations) at 2–5. Autodesk owns both AUTODESK and AUTODESK AUTOCAD registered marks. *Id.* [#1-5] Ex.

Plaintiffs use a product activation system to protect their software from piracy. *Id.* ¶ 39. This system requires customers to enter a key or serial number to activate Plaintiffs' software on their computers. *Id.* Alternatively, customers can contact Plaintiffs' activation servers via the internet to have the key or serial number transmitted directly to the computer. *Id.* Each copy of Plaintiffs' software has a unique key or serial code, and customers must purchase a license from Plaintiffs to receive the key or serial code to activate the software. *Id.* ¶ 41.

Hwang is the director and president of Defendant SKH Systems, Inc., a corporation registered in Texas to sell computers and software. Compl. [#1] ¶ 42. Doing business under the name "Jack's Laptops," Hwang sells refurbished laptops, USB drives, and hard drives preloaded with software. *Id.* ¶ 42. Hwang markets the refurbished technology using platforms such as Craigslist and Facebook. *Id.*

Through the Business Software Alliance (BSA),[2] Plaintiffs learned Hwang was allegedly advertising, selling, and activating unlicensed versions of Plaintiffs' software since at least August 2014. Mot. Summ. J.[#29] at 3. Plaintiffs hired a private investigator, Paul Brick, to learn more. Mot. Summ. J. [#29] at 3–4; *id.* [#29-16] Ex. D (Brick Decl.).

## II. The Investigation

During a series of recorded phone calls and meetings, Mr. Brick confirmed Hwang was selling and activating unauthorized copies of Plaintiffs' software. *See generally* Brick Decl. Mr. Brick first called Hwang on June 3, 2016 using the number listed on Facebook for Jack's Laptops.

---

D (Autodesk Trademark Registrations) at 2–9. Finally, CNC produces software such as Mastercam X5 and Mastercam X9, also copyrighted, and owns the MASTERCAM registered mark. *Id.* [#1-6] Ex. E (CNC Copyright Registrations) at 2–4; *id.* [#1-7] Ex. F (Mastercam Trademark Registration).

[2] The BSA advocates on behalf of the global software industry before governments and in the international marketplace, raises awareness about the risks associated with software piracy, and takes action against illegal software use. Mot. Summ. J. [#29-2] Ex. B (Mahmood Decl.).

*Id.* ¶ 3. In the initial call, Mr. Brick indicated he was "not looking to buy just one laptop with a couple pieces of software." Brick Decl. Ex. 1 (June 3, 2016 Tr.) at 9:18–10:19.[3] Rather Mr. Brick stated he had access to a large quantity of computers and needed to "get stuff like CS 6, AutoCAD, some science programs, . . . design type stuff for these online gaming companies in Austin." *Id.* Hwang responded "when I sell stuff like that . . . you're not buying a license. You're buying an activator. . . . And that's what I tell people." *Id.* at 11:7–11. In addition, Hwang repeatedly represented he possessed, could install, and could activate unlicensed software. *See generally id.* He also noted that "[a] lot of people who buy my stuff are students . . . [o]r, you know, single contractors" who cannot afford expensive software. *Id.* at 13:1–11. Additionally, Hwang explained "the caveat is right up front, [customers have] got to know that they're buying unlicensed software; and I never build programs without telling people that." *Id.* at 14:18–21.

Toward the end of first conversation, Mr. Brick proposed a relationship where he would develop connections with companies seeking to buy computers loaded with software and Hwang would work in a customer service capacity. *See id.* at 13:14–14:21. The two men discussed how such a relationship would function. *See id.* at 15:22–23:25. Hwang indicated "I sell a lot of laptops to small companies like that. Guys buy five laptops." *Id.* at 29:20–22. However, Hwang expressly warned Mr. Brick companies needed to be told they were buying unlicensed software. *Id.* at 30:1–4. Hwang conditioned working with Mr. Brick on companies knowingly assuming the risk of using unlicensed software. *Id.* at 30:6–17. In response, Mr. Brick indicated he would check with his potential clients and perhaps Hwang could start with one computer. *Id.* at 30:20–22.

---

[3] The Court cites the CM/ECF page numbers for clarity as the Brick Declaration and its supporting exhibits each feature their own page numbers.

In subsequent conversations, Hwang quoted Mr. Brick prices for installing and activating various unlicensed software programs. Brick Decl. ¶¶ 4–5. On June 8, 2016, Hwang and Mr. Brick met at a coffee shop where Hwang sold, installed, and activated a series of unlicensed software on Mr. Brick's laptop computer for $290. *Id.* ¶¶ 9–10. Mr. Brick observed Hwang using a computer program to bypass the software's product activation system. *Id.* ¶ 12.

During the meeting, Mr. Brick returned to the idea of continuing relationship—a partnership where Mr. Brick would furnish the laptops and customers and Hwang would install and activate unlicensed software, answer customer service questions, and keep the software running. *Id.* Hwang repeated that customers must be informed the software was unlicensed but agreed to move forward with such a partnership. Brick Decl. Ex. 7 (June 8, 2016 1:31 p.m. Tr.) at 83:3–19; 87:4–23.

### III. Current Suit

Plaintiffs filed this suit on January 9, 2017, against Hwang and SKH Systems, Inc.[4] (collectively, Defendants) alleging trademark infringement and counterfeiting violating 15 U.S.C. § 1114, unfair competition violating 15 U.S.C. § 1125(a), copyright infringement violating 17 U.S.C. § 501, and circumvention of copyright protections violating 17 U.S.C. § 1201(a). *See* Compl. [#1]. Hwang filed an answer *pro se* on January 26, 2017. *See* Answer [#10].

Five days after Hwang answered the lawsuit, Mr. Brick sent Hwang text messages asking follow-up questions about the unlicensed software Mr. Brick purchased from Hwang on June 8, 2016. Brick Decl. ¶ 13. Mr. Brick also inquired whether Hwang could "do another machine" and Hwang responded affirmatively. *Id.*; Brick Decl. Ex. 8 (Text Messages).

---

[4] SKH Systems, Inc. failed to answer the lawsuit, and the Clerk of the Court entered default against SKH Systems, Inc. on April 10, 2017. *See* Clerk's Entry of Default [#18].

In April 2017, Plaintiffs and Hwang agreed to entry of a preliminary injunction prohibiting Hwang "and any person or entity acting in concert with, or at his direction" from (1) "selling or offering for sale any computers loaded with Plaintiffs' software; (2) installing or activating [Plaintiffs'] software products by using counterfeit product key codes or serial numbers, and (3) destroying or deleting any evidence relevant to Plaintiffs' claims of copyright and trademark infringement." Agreed Prelim. Inj. [#23] at 1–2.

In response to each of Plaintiffs' discovery requests, Hwang asserted "his right under the Fifth Amendment of the U.S. Constitution not to answer this question, on the grounds that he may incriminate himself." Mot. Summ. J. [#29-17] Ex. E (Def.'s Discovery Resps.).

Plaintiffs now move for summary judgment, which is ripe for review.

## Analysis

### I. Legal Standard—Summary Judgment

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary

judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party makes an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## II. Application

Plaintiffs move for summary judgment against Hwang, arguing the evidence shows they are entitled to judgment as a matter of law on each of their claims. Hwang does not contest Plaintiffs'

allegations of willful trademark infringement, unfair competition, willful copyright infringement, and circumvention of copyright protections. Instead, Hwang only disputes the validity and admissibility of the evidence from Mr. Brick's investigation and the extent of Plaintiffs' recovery. Hwang asks the Court to exclude the evidence obtained by Mr. Brick's investigation.

As described below, Plaintiffs are entitled to summary judgment on their trademark infringement, unfair competition, and copyright infringement claims even without considering the evidence from Mr. Brick's investigation. The Court also finds the investigation evidence is admissible and Plaintiffs are entitled to summary judgment on their claim Hwang circumvented their copyright protections. Thus, Plaintiffs are entitled to summary judgment on all claims. The Court therefore awards Plaintiffs appropriate relief.

### A. Liability

#### i. Trademark Infringement and Unfair Competition

To succeed on a claim of trademark infringement, a plaintiff must "first establish ownership in a legally protectible mark, and second, . . . show infringement by demonstrating a likelihood of confusion." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 (5th Cir. 2010) (quotation omitted). And, "[a]s a general rule, the same facts which would support an action for trademark infringement would also support an action for unfair competition." *Tinker, Inc. v. Poteet*, No. 3:14-CV-2878-L, 2017 WL 4351304, at *6 (N.D. Tex. Sept. 30, 2017) (quoting *Marathon Mfg. Co. v. Enerlite Prod. Corp.*, 767 F.2d 214, 217 (5th Cir. 1985)). The key inquiry for both claims is "whether the challenged mark is likely to cause confusion." *Marathon Mfg. Co.*, 767 F.2d at 217 (citation omitted).

Here, Plaintiffs provide evidence to satisfy their trademark infringement and unfair competition claims. First, Plaintiffs provide copies of the federal registrations for the Marks, which are sufficient to show ownership in legally protectible marks. S*ee generally* Registrations; *see also Amazing Spaces, Inc.*, 608 F.3d at 237 ("[P]roof of the registration of a mark with the PTO constitutes prima facie evidence that the mark is valid and that the registrant has the exclusive right to use the registered mark in commerce with respect to the specified goods or services."). Second, Plaintiffs show a likelihood of confusion because Plaintiffs demonstrate Hwang used Plaintiffs' exact marks in advertising the sale of used laptops loaded with unauthorized copies of Plaintiffs' software. *See* Mot. J. Summ. [#29-3] Ex. B-1 (2014–2016 BSA Analysis) (reporting Jack Laptop's advertisements offering to sell software products using Plaintiffs' Marks); *id.* [#29-4] Ex. B-2 (2016–2017 BSA Analysis); *see also Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 311 (5th Cir. 2008) (confirming a full likelihood of confusion analysis is not required when marks are identical). Thus, Plaintiffs have presented a prima facie case for trademark infringement and unfair competition. Hwang does not offer defenses or otherwise challenge Plaintiff's motion for summary judgment. Thus, Plaintiffs are entitled to summary judgment on their trademark infringement and unfair competition claims.

### ii. Copyright Infringement

To establish copyright infringement, a plaintiff must demonstrate: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'n, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). The defendant bears the burden of establishing the affirmative defense that a license existed authorizing his use of the copyrighted material. *Lulirama Ltd., Inc. v. Axcess Broad. Servs., Inc.*, 128 F.3d 872, 884 (5th Cir. 1997).

Plaintiffs provide copies of the copyright registrations for the software products at issue, Registrations at 2–29, satisfying the first element of their copyright infringement claim. *See Geoscan, Inc. of Tex. v. Geotrace Techs., Inc.*, 226 F.3d 387, 393 (5th Cir. 2000) (noting fulfillment of the statutory formalities necessary to register a copyright shows ownership in software for the purposes of a valid copyright). Also, Plaintiffs supply evidence showing how Hwang marketed, sold, and distributed copies of Plaintiffs' copyrighted software. See 2014–2016 BSA Analysis; 2016–2017 BSA Analysis.[5] Hwang does not argue his use of the copyrighted material was licensed or authorized. As a result, Plaintiffs are entitled to summary judgment on their copyright infringement claim.

### iii. Circumvention of Copyright Protection

The federal circumvention provision mandates "[n]o person shall circumvent a technological measure that effectively controls access to a work protected under this title." 17 U.S.C. § 1201(a)(1)(A). To "circumvent a technological measure" means to "descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure without the authority of the copyright owner." *Id.* § 1201(a)(3)(A). "However, because § 1201(a)(1) is targeted at circumvention, it does not apply to the use of copyrighted works *after* the technological measure has been circumvented." *MGE UPS Sys., Inc. v. GE Consumer & Indus., Inc.*, 622 F.3d 361, 366 (5th Cir. 2010) (citation omitted) (emphasis in original). Thus, a plaintiff must establish a defendant circumvented copyright protections and did not merely use copyrighted materials after circumvention occurred. *See id.*

---

[5] Plaintiffs also highlight how Hwang advertised he was selling "a machine with $2000[] worth of software loaded on it for $280 . . . ." Mot. Summ. J. [#29] at 6–7 (citing Def.'s Dec. 20, 2013 Facebook post). Such language implies Hwang sought to compete with Plaintiffs by selling the unlicensed versions of their copyrighted software at lower prices. *See id.*

Plaintiffs' only evidence for their circumvention claim derives from Mr. Brick's investigation. *See* Mot. Summ. J. [#29] at 11–12 (citing Brick Decl. ¶ 12). Without Mr. Brick's observation Hwang used a computer program to bypass the software's product activation system, the Court cannot determine whether Hwang merely used the copyrighted works after the technological measure was circumvented or performed the circumvention himself. Thus, the Court must rule on Hwang's motion to exclude the results of Mr. Brick's investigation.

In asking the Court to exclude the results of Mr. Brick's investigation, Hwang essentially argues Mr. Brick entrapped Hwang by proposing "a large-scale business venture, under which the two of them would offer sales and support for unlicensed software . . . ." Resp. Mot. Summ. J. [#32] at 3. Hwang therefore contends the Court should exclude Mr. Brick's declaration and the transcripts of the meetings and calls because (1) Mr. Brick's conduct contradicts traditional notions of justice and fairness; (2) Mr. Brick's conduct was outside the range of conduct deemed acceptable by other courts for pretext investigations; and (3) Mr. Brick's declaration and the transcript "are hearsay and [the] transcripts lack foundation." *Id.*

The Court finds Hwang's arguments unpersuasive and therefore denies Hwang's motion to exclude. Most importantly, Hwang's foundational argument Mr. Brick entrapped him into agreeing to a large, illegal business venture is contradicted by the evidence. The evidence reflects Hwang was operating a large-scale business venture selling hundreds of computers loaded with Plaintiffs' software before Mr. Brick's investigation began. *See* 2014–2016 BSA Analysis; 2016–2017 BSA Analysis. And Hwang himself indicated he previously conducted ventures similar to the one proposed by Mr. Brick. June 3, 2016 Tr. at 29:20–22 ("I sell a lot of laptops to small companies like

that. Guys buy five laptops."). Thus, there is no indication Mr. Brick's conduct contradicts traditional notions of justice and fairness.

Additionally, the cases cited by Hwang are either irrelevant to the specific facts of this case or support the admission of the evidence from Mr. Brick's investigation. *See* Resp. Mot. Summ. J. [#32] at 5–7 (first citing *Apple Corp Ltd., MPL v. Int'l Collectors Soc.*, 15 F. Supp. 2d 456 (D.N.J. 1998); then citing *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 82 F. Supp. 2d 119 (S.D.N.Y. 1999); and then citing *A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, No. 96 CIV. 9721PKLTHK, 2002 WL 2012618, at *9 (S.D.N.Y. Sept. 3, 2002)). Hwang offers no case where a court excluded evidence obtained through a pretext investigation. *See Apple Corp Ltd., MPL*, 15 F. Supp. 2d at 473–76 (holding attorneys' use of undercover investigators posing as customers of defendants to detect ongoing violations of consent decree did not violate New Jersey's attorney discipline rules); *Gidatex, S.r.L.*, 82 F. Supp. 2d at 126 (noting "[attorney] ethical rules should not govern situations where a party is legitimately investigating potential unfair business practices by use of an undercover [investigator] posing as a member of the general public engaging in ordinary business transactions with the target" and holding the evidence obtained may be admitted); *A.V. by Versace, Inc.*, 2002 WL 2012618, at *9 (holding evidence obtained by undercover investigation was admissible and remarking that courts "have frequently admitted evidence, including secretly recorded conversations by investigators posing as consumers in trademark disputes").

Finally, Hwang's recorded statements are not hearsay, and Plaintiffs lay a proper foundation to admit the transcripts of the investigation's calls and meetings. Hwang's statements are admissions by a party opponent and therefore not hearsay. *See* FED. R. EVID. 801(d)(2)(A) (specifying that a statement offered against an opposing party and made by the party in an individual or representative

capacity is not hearsay). Plaintiffs offer sufficient evidence to show the transcripts of the meetings and calls are what Plaintiffs claim they are. *Comp.* FED. R. EVID. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."), *with* Brick Decl. ¶¶ 1–9 (specifying the date, time, and method of contact for each recorded interaction with Defendant). Hwang does not attempt to argue the recording or the transcripts are inaccurate. *See* Resp. Mot. Summ. J. [#32] at 9–10.

Thus, the Court denies Hwang's motion to exclude and considers the evidence from Mr. Brick's investigation. The investigation evidence highlights how Mr. Brick observed Hwang using a program to circumvent Plaintiffs' access control technology. *See* Brick Decl. ¶ 12. Specifically, Mr. Brick describes how Hwang's program bypassed the need for a product activation key by "trying different combinations of characters until it finds a key combination that works and can be used to activate the software." *Id.* Such evidence is sufficient to show Hwang improperly circumvented Plaintiffs' copyright protection measures on one occasion. Plaintiffs offer no other evidence indicating Hwang circumvented Plaintiffs' copyright protections at any other time.[6]

### iv. Willful Infringement

Willful infringement requires reckless disregard of a copyright or trademark holder's rights. *Graper v. Mid-Continent Cas. Co.*, 756 F.3d 388, 395 & n.7 (5th Cir. 2014). Here, the record

---

[6] In the Fifth Circuit, a party may invoke the Fifth Amendment privilege against self-incrimination during the discovery process of a civil proceeding. *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 547 (5th Cir. 2012), *as revised* (Jan. 12, 2012). And courts may draw an inverse inference from a defendant's invocation of the Fifth Amendment on summary judgement. However, a court cannot decide an issue on summary judgment on the basis of the invocation of the Fifth Amendment alone; there must be independent evidence in addition to the invocation. *Sec. & Exch. Comm'n v. Sethi Petroleum, LLC*, 229 F. Supp. 3d 524, 532 (E.D. Tex. 2017) (citing *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 119 & n.2 (5th Cir. 1990)). Such independent evidence has not been presented here.

demonstrates Hwang wilfully infringed Plaintiffs' copyrights and trademarks and continued to do so even after this lawsuit was filed. Plaintiffs provide evidence Hwang advertised, sold, and distributed unlicensed versions of Plaintiffs' copyrighted software while using Plaintiffs' exact trademarks. Hwang's statements on Facebook and to Mr. Brick show Hwang's acts were done knowingly and intentionally. Therefore, the Court finds Hwang willfully infringed on Plaintiffs' copyrights and trademarks and Plaintiffs' damages should be enhanced accordingly. *See id.* at 395 (reiterating that willfulness covers knowing violations).

**B.     Relief**

Plaintiffs seek permanent injunctive relief, statutory damages, and attorneys' fees and costs. Attempting to limit Plaintiffs' relief, Hwang offers an unsupported, two-paragraph declaration he sold an average of three laptops a month and earned no more than $25,200 in income from these sales. *See* Resp. Mot. Summ. J. [#32-1] Ex. A (Hwang Decl.). In light of Hwang's assertion of Fifth Amendment privilege, the Court refuses to consider Hwang's last-minute declaration partially withdrawing his assertion of privilege. *See Davis-Lynch, Inc.*, 667 F.3d at 547–48 (holding district court did not err in striking affidavit where defendant withdrew his Fifth Amendment privilege to respond to motion for summary judgment via an affidavit where the eleventh-hour withdrawal appeared "to be an attempt to abuse the system or gain an unfair advantage"). To allow Hwang to provide previously withheld information at the summary judgment stage would place Plaintiffs at a significant and unfair disadvantage. *See id.* at 548 & n.20 (collecting cases denouncing a party's withdrawal of Fifth Amendment privilege to defend against a summary judgment motion). The Court will now address each category of relief requested by Plaintiffs.

### i. Permanent Injunction

Plaintiffs seek injunctive relief and an impounding of all infringing materials. Permanent injunctions are available to plaintiffs when the court deems an injunction reasonable to prevent further infringement of copyright and trademark rights. 17 U.S.C. § 502; 15 U.S.C. § 1116.

Plaintiffs submitted evidence showing Hwang continued to sell unlicensed versions of Plaintiffs' software and use the Marks despite the filing of this lawsuit. Although Hwang ultimately agreed to a preliminary injunction in this case, a permanent injunction is appropriate to prevent Hwang from infringing on Plaintiffs' marks and copyrights in the future. *See MGE UPS Sys., Inc.*, 622 F.3d at 371 (affirming grant of preliminary injunction in copyright case where infringer still possessed infringing materials).

### ii. Statutory Damages

#### a. Copyright Infringement

A plaintiff in a copyright infringement suit may choose to pursue statutory damages for copyright infringement, even if the statutory damages amount to less than the actual damages the plaintiff experienced. *Broadcast Music Inc., v. Xanthas, Inc.*, 855 F.2d 233, 236 (5th Cir. 1988). Statutory damages for copyright infringement range from $750 to $30,000 per instance of infringement. 17 U.S.C. § 504(c). A court may award any amount of statutory damages it considers just, so long as the award does not exceed the statutory maximum. *Id.* Where a copyright owner proves infringement was committed willfully, the court may increase the award of statutory damages to a sum of not more than $150,000. *Id.*

To determine where an award should lie on the range of statutory damages, courts consider factors such as: "the willfulness of the defendant's conduct, the deterrent effect of an award on both

the defendant and on others, the value of the copyright, whether the defendant has cooperated in providing necessary records to assess the value of the infringing material, and the losses sustained by the plaintiff." *Commercial Law League of Am., Inc. v. George, Kennedy & Sullivan*, LLC, No. CIV.A. H–07–0315, 2007 WL 2710479, at *3 (S.D. Tex. Sept. 14, 2007).

Plaintiffs seek the statutory maximum of $150,000 for each of nineteen copyrights violated by Hwang, requesting a total of $2,850,000. Given the wilfulness of Hwang's conduct, his continued infringement after this lawsuit was filed, and the need for deterrence, an award of statutory damages in excess of the minimum is appropriate. There is no evidence of the value of copyrights, the value of the infringing material, or any losses sustained by Plaintiffs other than attorneys' fees and costs in this suit. Given these facts and awards by courts in this circuit in similar cases, this Court awards Plaintiffs statutory damages in the amount of $25,000 for each copyright infringed upon. *See Rovio Entm't, Ltd. v. GW Trading LLC*, No. 5:13-CV-1079-XR, 2016 WL 4126657, at *6 (W.D. Tex. Aug. 2, 2016) (awarding $25,000 per copyright work infringed). It is undisputed Hwang willfully infringed nineteen copyrighted works, and the Court therefore awards Plaintiffs a total of $475,000.

### b. Trademark Infringement

Similarly, a trademark owner may elect to recover statutory damages "not less than $1,000 or more than $200,000 per counterfeit mark." 15 U.S.C. § 1117(c). If the trademark infringement is willful, the statutory maximum increases to $2,000,000 per counterfeit mark. *Id.* Plaintiffs request $250,000 for each of the trademarks upon which Hwang willfully infringed, totaling $1,000,000. In determining the amount of statutory damages for trademark infringement, courts often look to the same factors assessed in awarding statutory damage for copyright infringement. *See Coach, Inc. v. Brightside Boutique*, No. 1:11-CA-20 LY, 2012 WL 32941, at *4 (W.D. Tex. Jan. 6, 2012), *report*

*and recommendation adopted* (W.D. Tex. Mar. 16, 2012) (collecting cases where courts applied the factors for assessing the size of statutory damages under 17 U.S.C. § 504(c) to assessing statutory damages under 15 U.S.C. § 1117(c)).

Again, the wilfulness of Hwang's conduct, the continued infringement after this lawsuit was filed, and the need for deterrence favor Plaintiffs. The Court therefore awards Plaintiffs higher than the statutory minimum. Looking to similar cases in this circuit, the Court finds an award of $100,000 per mark infringed is appropriate to accomplish the dual goals of compensation and deterrence. *See Coach, Inc.*, 2012 WL 32941, at *5 (awarding $100,000 per mark per type of good infringed and collecting cases where $100,000 was awarded per mark per good infringed). Therefore, the Court awards $100,000 for each of the four trademarks infringed, totaling $400,000.

### c. Circumvention of Copyright Protection

A party succeeding on a claim of circumvention of copyright protection may elect to recover statutory damages for each violation "in the sum of not less than $200 or more than $2,500 per act of circumvention, device, product, component, offer, or performances of service, as the court considers just." 17 U.S.C. § 1203(c)(3)(A).

Plaintiffs seek the statutory maximum of $2,500 for the circumvention of sixteen separate product registrations, requesting a total of $40,000.[7] Plaintiffs appear to ask the Court to infer Hwang used key generation software to circumvent Plaintiffs' access control technology for sixteen product registrations from the single occasion of circumvention observed by Mr. Brick because Hwang asserted his Fifth Amendment right against self-incrimination and refused to answer Plaintiffs' discovery requests. *See* Mot. Summ. J. [#29] at 16–17 & n.34. The Court declines to do so without

---

[7] Plaintiffs do not identify which sixteen product registrations they claim Hwang circumvented.

evidence, direct or circumstantial, showing Hwang circumvented Plaintiffs' copyright protections on other occasions.

Instead, the Court awards the maximum statutory damages, $2,500, for the one occasion of circumvention for which Plaintiffs provided evidence.

### iii. Costs & Attorneys' Fees

Plaintiffs request an award of attorneys' fees and costs for prevailing on their copyright infringement claims under 17 U.S.C. § 505 and trademark infringement claims under 15 U.S.C. § 1117.

At the conclusion of a copyright action, a court "may allow the recovery of full costs . . . . [and] may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. The total amount of costs and attorneys' fees a plaintiff may recover is left to the discretion of the court. *Id.* Courts deciding requests for attorneys' fees and costs in a copyright infringement case "must take into account a range of considerations." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1989 (2016). Specifically, the deciding court must give "substantial weight to the reasonableness of the losing party's position" but must also consider other circumstances relevant to granting fees such as a need for deterrence, a party's litigation misconduct, or frivolousness. *Id.* at 1983, 1985, 1989.

Plaintiffs have shown they are entitled to attorneys' fees and costs under 17 U.S.C. § 505. Hwang failed to offer any objectively reasonable explanation for the distribution of unlicensed versions of Plaintiffs' software. Considering the prolonged nature of Hwang's business operations and Hwang's willful copyright infringement, the need for deterrence is strong. An award of reasonable attorneys' fees is appropriate.

By contrast, attorneys' fees are awarded in trademark cases only in "exceptional cases . . . to the prevailing party." 15 U.S.C. § 1117. "An exceptional case is one where the violative acts can be characterized as malicious, fraudulent, deliberate, or willful." *Seven–Up Co. v. Coca–Cola Co.*, 86 F.3d 1379, 1390 (5th Cir. 1996) (internal quotation marks omitted). The prevailing party has the burden to show, by clear and convincing evidence, "'a high degree of culpability on the part of the infringer, for example, bad faith or fraud,' and a few cases have gone so far as to require 'very egregious conduct.'" *Id.* (quoting *Tex. Pig Stands v. Hard Rock Cafe Int'l*, 951 F.2d 684, 696–97 & n. 25 (5th Cir. 1992); *Moore Bus. Forms, Inc. v. Ryu*, 960 F.2d 486, 491 (5th Cir. 1992)). "A district court should decide whether a case is exceptional by examining all the facts and circumstances." *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 65 (5th Cir. 1992). "The determination as to whether a case is exceptional is left to the sound discretion of the trial court." *Seven–Up*, 86 F.3d at 1390.

The Court finds this case is an exceptional trademark case meriting an award of attorneys' fees. Hwang deliberately used Plaintiffs' exact marks in advertising the sale of computers to solicit sales. Plaintiffs have proven by clear and convincing evidence Hwang possessed a high degree of culpability.

In particular, Plaintiffs ask the Court to award $35,899.50 in attorneys' fees and costs based on what counsel "routinely charge[s] . . . in intellectual property as well as commercial matters[.]" Mot. Summ. J. [#29-18] Ex. F (Davidson Decl.) at ¶ 6. Yet, because counsel reduced its hourly rates for its attorneys and paralegals, "[t]he total amount of attorney's fees incurred in connection with this case is $27,790.00." *Id.* ¶ 7. With reported costs and expenses of $625.00, Plaintiffs represents the attorneys' fees and costs of this suit to total $28,415.00. *Id.*

Plaintiffs fail to specify the precise hourly rates charged for this case or the specific tasks performed by their attorneys and paralegals. In seeking to recover for paralegal work, this failure is particularly troubling. Paralegal work can only be recovered as attorneys' fees if the work is legal rather clerical. *Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001). Plaintiffs provide no evidence by which the Court can determine if the paralegals' work was legal or clerical. *See* Davidson Decl. The Court therefore declines to award Plaintiffs paralegal expenses.

Plaintiffs do indicate their attorneys expended 69.4 hours on this case in filing the pleadings, communicating with Hwang before he retained counsel, moving for a preliminary injunction, obtaining an agreed preliminary injunction, and successfully moving for summary judgment. *See id.* ¶¶ 6, 8. Because Plaintiffs do not provide the hourly rates charged by their attorneys, the Court awards attorneys' fees at a rate of $300 per hour, the 2015 median hourly rate charged by attorneys in the Austin area. *See* STATE BAR OF TEXAS, 2015 HOURLY FACT SHEET (Aug. 2016) at 8. Therefore, the Court awards Plaintiffs a total of $20,820 in attorneys fees for 69.4 hours at a rate of $300 per hour.

**Conclusion**

In sum, the Court DENIES Hwang's motion to exclude the evidence collected from Mr. Brick's investigation. Finding no genuine dispute as to any material fact, the Court GRANTS Plaintiffs' motion for summary judgment. Furthermore, the Court GRANTS Plaintiffs relief as described within this opinion. Such relief will be finally awarded when the Court issues a final judgment in favor of Plaintiffs against Hwang.

However, Plaintiffs have failed to address the Clerk's Entry of Default concerning Defendant SKH Systems, Inc., which was entered on April 10, 2017. Default Entry [#18]. Plaintiffs have yet

to move for default judgment against SKH Systems, Inc. and therefore the claims against SKH Systems, Inc. remain. *See New York Life Ins. V. Brown*, 84 F.3d 137 (5th Cir. 1996) (distinguishing between entry of default and a default judgment). Within twenty days of the entry of this order, Plaintiffs must show cause for the failure to prosecute or the Court will dismiss Plaintiffs' claims against SKH Systems, Inc. and enter a final judgment.

Accordingly,

IT IS THEREFORE ORDERED that Defendant Chorng "Jack" Hwang's Motion to Exclude Evidence [#32] is DENIED;

IT IS FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment [#29] is GRANTED; and

IT IS FINALLY ORDERED that Plaintiffs shall show cause for the failure to prosecute their claims against Defendant SKH Systems, Inc. within TWENTY (20) DAYS of the entry of this order or the Court will dismiss Plaintiffs' claims against Defendant SKH Systems, Inc. and enter a final judgment in this case.

SIGNED this the 27 day of December 2017.

/s/ Sam Sparks
SAM SPARKS
UNITED STATES DISTRICT JUDGE